The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs and arguments on appeal. The appealing party has shown good ground in part to reconsider the evidence. Having reconsidered the entire evidence of record, the Full Commission modifies in part and affirms in part the Deputy Commissioners holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 22 October 1998 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer.
3. Federated Mutual Insurance Company was the carrier on the risk at all relevant times herein.
4. The parties stipulated to plaintiffs medical records from the Plastic Surgery Center, Memorial Mission Hospital, Appalachian Hand Therapy Clinic, Ltd., Carolina Hand Surgery Associates, P.A., IntraCorp, Asheville Orthopaedic Associates, P.A., The Asheville Eye Medical and Surgical Associates, and the medical notes from Drs. James Thompson, Keith J. Ure, Reid Taylor and Robert Wiggins.
5. The issues presented are:
 a) Whether plaintiff is entitled to further medical treatment for his right hand, left shoulder, lower back and eyes pursuant to his compensable injury by accident of 19 February 1997?
 b) Whether plaintiff is entitled to attorneys fees pursuant to G.S 97-88.1?
 ***********
Based upon the entire evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 22 October 1998, plaintiff was a 37 year old licensed electrical contractor.
2. Plaintiff was injured while working for defendant-employer on 19 February 1997, when an electrical distribution panel on which he was working exploded. Plaintiff was thrown backwards and landed on his back and head. As a result of this injury by accident, plaintiff sustained second degree burns to both hands and to his face. Plaintiff also sustained a concussion and an injury to his back.
3. Plaintiff was taken to the hospital for his injuries and remained hospitalized for five days. Plaintiff complained primarily of low back pain and Dr. Keith J. Ure, an orthopedist, diagnosed plaintiff with a contusion of his lumbar spine with a possible sprain or strain.
4. Defendants filed an Industrial Commission Form 60 on 24 September 1997 which established plaintiffs average weekly wage of $520.00, yielding a compensation rate of $346.68.
5. On 4 April 1997, plaintiff presented to Dr. Ure complaining of intermittent dizziness and continuing low back pain. Dr. Ure ordered and MRI on plaintiffs back which revealed minimal disc herniation at L3-4, L4-5, L5-S1 without nerve impingement. Dr. Ure opined that plaintiff back contusion and possible sprain or strain could have been caused by his 19 February 1997 injury by accident, but that plaintiffs pain was mechanical and not neurological. Dr. Ure also stated that his examination of plaintiff also revealed symptom magnification.
6. On 7 April 1997, plaintiff presented to Dr. Robert Wiggins, an ophthalmologist, complaining of blurred vision.
7. In June 1997, plaintiff complained to Dr. Thompson, an orthopedic surgeon, of numbness in his right hand. Plaintiff also had a positive Tinel sign over the median nerve at the wrist.
8. Plaintiff presented to Dr. Reid Taylor, a neurologist, on 5 June 1997 again complaining of dizzy spells and memory loss. However, Dr. Taylor could find no neurological cause for plaintiffs dizzy spells and contributed them to the concussion plaintiff sustained on 19 February 1997. Dr. Taylor further determined that Plaintiff memory loss was consistent with post-concussive conditions. Finally, Dr. Taylor noted that plaintiff had a corneal abrasion, but that he never complained of color blindness or of any vision problems.
9. Dr. Ure released plaintiff to return to work on 26 June 1997 with a permanent thirty (30) pound lifting restriction, but with no permanent partial disability rating to her back.
10. On 29 July 1997, plaintiff returned to Dr. Thompson complaining of numbness in his right hand and of frequently dropping objects.
11. On 29 August 1997, plaintiff returned to Dr. Wiggins complaining of color blindness. Plaintiff reported never having difficulty distinguishing between different colors prior to 19 February 1997. However, Dr. Wiggins opined to a reasonable degree of medical certainty that plaintiffs corneal haze would not account for plaintiffs color vision problem. Dr. Wiggins also opined to a reasonable degree of medical certainty that it would be unusual for plaintiffs color vision problem to have been caused by the explosion of the panel box and the resulting force which blew plaintiff backwards onto his back and head. Dr. Wiggins further opined that color blindness is most commonly caused by a congenital color vision deficiency.
12. Plaintiff presented to Dr. Thompson again in November, 1997 with more right hand tingling, numbness and frequently dropping objects. Dr. Thompson diagnosed plaintiff with job related post-traumatic compression of median nerve right wrist, carpal tunnel syndrome and recommended surgery. The surgery, however, was denied by defendants and has not been performed.
13. On 25 February 1999, plaintiff complained for the first time to Dr. Thompson of left shoulder pain related to a 1993 left shoulder injury. Dr. Thompson diagnosed plaintiff with acromioclavicular joint on the left with subacromial impingement syndrome. Dr. Thompson opined that plaintiffs left shoulder injury may not have been caused by his 19 February 1997 injury by accident, but it "certainly could have been exacerbated by it or made worse by it.
14. Plaintiffs 1993 left shoulder injury was filed as a workers compensation claim and plaintiffs medical bills were paid. At the hearing before the Deputy Commissioner on 20 October 1998, plaintiff testified that he reported left shoulder pain while in the hospital in February 1997. However, the competent medical evidence in the record establishes that plaintiff did not mention left shoulder pain until 25 February 1999 when he first reported it to Dr. Thompson, more than two years after his work-related accident. Plaintiff further testified that he first injured his left shoulder at work in 1993 and that the problem totally resolved after two cortisone shots. The Full Commission gives greater weight to the medical notes regarding when plaintiff first reported left shoulder pain. Moreover, the Full Commission finds that plaintiff failed to allege that he had sustained a left shoulder injury on 19 February 1997 in his Industrial Commission Form 33 or in the Industrial Commission Form 18.
15. Plaintiff had never experienced color blindness prior to his 19 February 1997 injury by accident. At the time of his accident, plaintiff was working with his eyes in close proximity to the electrical panel that exploded and he sustained facial flash burns. Dr. Wiggins has stated that he can not form an opinion regarding plaintiffs current visual complaints and symptoms without obtaining an MRI. To date, approval for the MRI has not been given by defendants.
16. Based upon the nature of plaintiffs visual complaints and symptoms, the circumstances of his 19 February injury by accident and medical evidence, the Full Commission finds that the MRI as recommended by Dr. Wiggins would be necessary and appropriate,
17. The competent evidence in the record establishes that plaintiff had minimal disc herniation in his back and without any nerve impingement.
18. The competent evidence in the record fails to establish a claim for the occupational disease, carpal tunnel syndrome. Moreover, plaintiff failed to allege in his Industrial Commission Form 33 that he had contracted the occupational disease of carpal tunnel syndrome.
19. Any medical problems from which plaintiff may now suffer relating to his right hand or lower back are not causally related to his 19 February 1997 injury by accident.
20. Defendants have reasonably defended this matter.
 ***********
Based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiffs claim regarding his alleged shoulder injury was not filed within two years of his 19 February 1997 injury by accident and is therefore barred. G.S. 97-24.
2. Plaintiff failed to carry the burden of proof that his current medical problems relating to his right hand and lower back were causally related to his injury by accident of 19 February 1997. G.S. 97-25. Accordingly, plaintiff is not entitled to additional medical compensation related to his treatment for his right hand or lower back. G.S. 97-2(19).
3. Plaintiff is entitled to have defendants pay for the MRI as recommended by Dr. Wiggins for the determination of the cause and extent of plaintiffs visual complaints and symptoms. G.S. 97-25.
4. Plaintiff is not entitled to attorneys fees as defendants reasonably defended this matter. G.S. 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies in part and affirms in part the Deputy Commissioners holding and enters the following:
 AWARD
1. Plaintiffs claims regarding his shoulder, right hand and lower back must be under the law, and the same are hereby DENIED.
2. Defendants shall pay for the MRI as recommended by Dr. Wiggins for the determination of the cause and extent of plaintiffs visual complaints and symptoms.
3. Defendants shall pay the costs, including expert witness fees in the amount of $195.00 to Dr. Wiggins, $195.00 to Dr. Taylor, $235.00 to Dr. Ure and $235.00 to Dr. Thompson.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER